UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                               Case No. 10-20535

                Plaintiff,                 Honorable David M. Lawson

v.

BOBBY W. FERGUSON, MICHAEL
WOODHOUSE, CALVIN L. HALL,
FERGUSON ENTERPRISES, INC.,
XCEL CONSTRUCTION SERVICES,
INC., and A & F ENVIRONMENTAL/
JOHNSON CONSTRUCTION SERVICES,

                     Defendants.

_____/

## OPINION AND ORDER DENYING MOTIONS TO SUPPRESS EVIDENCE

       Presently before the Court are three motions to suppress evidence alleging the invalidity of four federal search warrants. Two of the motions seek to suppress evidence resulting from searches of the offices of defendants Xcel Construction and Ferguson Enterprises on January 15, 2009. The other one seeks to suppress evidence collected during a search on September 8, 2010 of two residences connected to defendant Ferguson. The defendants contend that the affidavit in support of the January 15, 2009 search warrants contains false statements and omissions that negate a finding of probable cause and that the affidavit in support of the September 8, 2010 warrants does not contain sufficient facts to establish probable cause to believe that evidence of illegal conduct would be found at the search locations. The defendants also ask for an evidentiary hearing so they can show that the affiants made statements that were false. The government contends, among other arguments, that several of the defendants do not have "standing" to challenge the searches. The Court heard oral argument on the motions on January 19, 2012. The Court finds that the

government's standing argument is meritless, but also finds that the affiants did not make materially false statements, and the affidavit to search the respective business offices established probable cause and was sufficient to authorize the search warrants. The Court also finds that although the affidavit of September 7, 2010 did not establish probable cause to believe that evidence of the crimes would be found in the residences, the evidence seized in those searches should not be suppressed because the officers relied in good faith on the search warrants. Therefore, the Court will deny all three of the defendants' motions to suppress evidence.

## I. Facts

The facts of the case are summarized in an opinion denying various other pretrial motions, including a motion to dismiss, filed on February 16, 2012. The short version is that defendant Bobby Ferguson owned and operated defendant Ferguson Enterprises, Inc.; in 2002, he formed Johnson Construction Services, Inc.; in 2002 Ferguson also formed Xcel Construction services; and Johnson Construction and Ferguson Enterprises joined in a venture in May 2003 to form A&F Environmental/Johnson Construction Services. Defendant Michael Woodhouse was the president of Xcel in 2006.

The government alleges that the defendants conspired to rig bids to obtain contracts to perform the infrastructure work on the Garden View Estates (GVE) housing development. GVE was a joint project of the United States Department of Housing and Urban Development (HUD) and the Detroit Housing Commission (DHC). HUD invested about $44 million in the demolition of Herman Gardens and the construction of GVE through various federal grants. The City of Detroit also contributed approximately $13 million in 2006 toward the GVE infrastructure development.

On January 14, 2009, Magistrate Judge Donald A. Scheer issued warrants to search the offices of defendant Ferguson Enterprises at 14385 Wyoming, Detroit, Michigan and the offices of defendant Xcel Construction Services at 500 Griswold, Detroit, Michigan. The warrants authorized agents to seize evidence relating to: theft or bribery concerning programs receiving federal funds, fraud against the United States government, mail fraud, bank fraud, and money laundering. The search warrants were executed on January 15, 2009. During the search of 14385 Wyoming, agents seized nine boxes of documents, condoms, a black glove, and two handguns along with a box of ammunition and gun cleaning cloths. During the search of 500 Griswold, agents seized over $261,000 as well as financial documents and other business records.

Those warrants were based on an affidavit prepared by Special Agent Matthew Nutt. In the affidavit, agent Nutt cited information from HUD officials describing the awarding of public contracts to defendants Xcel and Ferguson Enterprises, agreements between the DHC and the City and between the DBA and defendant Xcel, and information suggesting a connection between defendants Xcel and Ferguson Enterprises, including information that both companies were operating from the same office and were controlled by defendant Ferguson. The affidavit also cited financial transactions between defendant Ferguson and First Independence Bank, problems that had arisen with the GVE infrastructure project, and text messages between defendant Ferguson and City of Detroit officials.

On September 7, 2010, Magistrate Judge R. Steven Whalen issued a warrant to search Condominium Unit 5I, 300 Riverfront Drive, Detroit, Michigan and a warrant to search 25495 St. James, Southfield, Michigan. Both are residences. The warrants authorized agents to seize evidence relating to theft or bribery concerning programs receiving federal funds, mail fraud, and money

-3-

laundering.  The search warrants were executed on September 8, 2010.  During the search, agents seized a variety of items, including travel documents, proposal information, cashier's checks, business and bank records, shotgun shells, and a safe.

The September 7 warrants were based on an affidavit prepared by Special Agent Gwen Rosenthal.  In the affidavit, agent Rosenthal cited information regarding Tyrone McMillian's connection to defendant Ferguson, surveillance and witness interviews indicating that defendant Ferguson used 25495 St. James as a residence, evidence found in the first search, and evidence of withdrawals and cashier's check deposits at various banks by defendants Ferguson and Hall after the first search.  The affidavit states that, based on bank documents, real property records, and corporate filings, McMillian, who resided at 300 Riverfront, was being used by defendant Ferguson to launder funds.  The affidavit states that 300 Riverfront was titled to River Place Management, LLC, for which McMillian is a registered agent, but that evidence suggested that defendant Ferguson was the owner of the property.  The affidavit also cites statements by a confidential informer that suggest that the defendants were involved in extortion.

On October 31, 2011, defendants Michael Woodhouse, Calvin Hall, and Xcel Construction Services (the "Xcel defendants") filed a motion to suppress evidence challenging the January 15, 2009 warrant to search the Griswold office. [dkt. #121].  On November 2, 2011, defendants Bobby Ferguson, Ferguson Enterprises, Inc., and A&F Environmental/Johnson Construction Services (the "Ferguson defendants") filed a notice of joinder in the Xcel defendants' motion.  On November 28, 2011, the Ferguson defendants filed two motions to suppress: the first challenged both of the September 8, 2010 search warrants [dkt. #146]; the second challenged the January 15, 2009 search warrant to search the Wyoming office [dkt. #147].  The government filed responses to the motions

-4-

and the defendants filed replies.  The Court heard oral argument on all three motions to suppress on January 19, 2012.

The defendants argue that the affidavit in support of the January 15, 2009 search warrants contain false statements and omissions that negate a finding of probable cause and that the affidavit in support of the September 8, 2010 warrants does not contain sufficient facts to permit a finding that there was probable cause to believe that evidence of illegal conduct would be found at the search locations.  The government disputes those arguments and also contends that the defendants lack "standing" to challenge the searches, by which, the Court presumes, the government means that the defendants did not have a legitimate expectation of privacy in some of the premises searched. With respect to the false statement argument, the defendants ask for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).  The government contends that the defendants have failed to make the requisite preliminary showing to permit a *Franks* hearing.

## II.  "Standing"

The government contends that the respective defendants have not established that they have "standing" to challenge the searches, because they have not shown that they had an actual, subjective expectation of privacy in the respective premises.  The government argues that the only defendant with an expectation of privacy with respect to the Xcel offices at 500 Griswold was defendant Xcel, but even that defendant's expectation of privacy did not extend to a hidden safe behind a wall in an office occupied by defendant Ferguson.  The government also argues that Xcel could not have a reasonable expectation of privacy in areas of its office where members of the public were invited to conduct business.

-5-

The government challenges defendant Woodhouse's claim of standing to challenge the search of Xcel's corporate office because he has not made a sufficient showing of his reasonable expectation of privacy in the entire office, and any attempt to challenge parts of the search beyond his personal office should be dismissed.

The government argues that defendants Hall and Ferguson have likewise failed to sufficiently demonstrate that they have standing to challenge the search of the Xcel office, and defendant Hall has made no factual statement explaining his standing to challenge the search warrant. It insists that neither Woodhouse nor Hall have demonstrated a reasonable expectation of privacy in the safe in Ferguson's office. And the government argues that Ferguson's and Ferguson Enterprise's claim that they were permitted to store personal belongings at the Xcel office is unsupported and therefore falls short of their burden to demonstrate a violation of their Fourth Amendment rights.

The government also contends that the Ferguson defendants do not have "standing" to challenge the search of the Wyoming premises because they have not provided evidence to support a conclusion that its business premises were unavailable to the public. The government says that defendant Ferguson Enterprises's expectation of privacy does not extend to a concealed safe used by defendant Ferguson to store a firearm.

The government repeats its "standing" arguments in response to the motions challenging the search of the residences at the Riverfront Apartments and the Southfield, Michigan home.

The "rights assured by the Fourth Amendment are personal rights, and . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States,* 390 U.S. 377, 389 (1968) (quoted in *Rakas v.*

*Illinois,* 439 U.S. 128, 138 (1978)). Consequently, the defendants must carry the burden of establishing that their own Fourth Amendment rights were violated. *Rakas,* 439 U.S. at 132 n.1. To do so, they must show (1) that they had a subjective expectation of privacy in the place that was searched or the items that were seized, and (2) that society is prepared to recognize that expectation as legitimate. *California v. Ciraolo,* 476 U.S. 207, 211 (1986); *United States v. King,* 227 F.3d 732, 743-44 (6th Cir. 2000); *see also United States v. Delgado,* 121 F. Supp. 2d 631, 636 (E.D. Mich. 2000). "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas,* 439 U.S. at 143 n. 12.

Characterizing this question as one of "standing" miscasts the issue. The Supreme Court rejected the concept of "standing" in *Rakas,* 439 U.S. at 139-40. It is commonly acknowledged that "in determining whether a defendant is able to show the violation of his . . . Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *Minnesota v. Carter,* 525 U.S. 83, 88 (1998) (quoting *Rakas,* 439 U.S. at 140). More than ten years ago, the Sixth Circuit recognized that "the concept of 'standing' has not had a place in Fourth Amendment jurisprudence for more than a decade" and that "the matter of standing in the context of searches and seizures actually involve[s] substantive Fourth Amendment law [in which] . . . a defendant [must] prove a legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct." *United States v. Smith,* 263 F.3d 571, 581-82 (6th Cir. 2001) (quoting *United States v. Sanchez,* 943 F.2d 110, 113 n .1 (1st Cir. 1991)).

The properties located at 14385 Wyoming and 500 Griswold were commercial premises rather than residences. But the Supreme Court "long has recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes." *New York v. Burger*, 482 U.S. 691, 699 (1987). "An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable." *Ibid*. "An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home." *Id*. at 700.

The government acknowledges that defendant Xcel had an expectation of privacy in its offices at 500 Griswold, but argues that the expectation of privacy was diminished because there is some evidence to suggest that the premises were open to the public. The government relies on *Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 385, 388-89 (6th Cir. 1987), in which the Sixth Circuit held that there is no reasonable expectation of privacy in commercial premises where the public is invited to enter and transact business. However, *Autoworld* is readily distinguishable. There, five vehicles were seized from an auto showroom that was open to the public. The items seized in this case were business documents, for the most part. Also telling are the cases the *Autoworld* court cited, which dealt with commercial premises where the public was expected to enter and purchase goods. *See Maryland v. Macon*, 472 U.S. 463 (1985) (finding that entering an adult bookstore and examining the magazines on display did not constitute a search under the Fourth Amendment); *United States v. Brandon*, 599 F.2d 112, 113 (6th Cir. 1979) (holding that examination of used cars on display in a used car lot did not violate the owner's expectation of privacy). In contrast, here, there is no evidence to suggest that 500 Griswold was generally open to the public to browse merchandise or make purchases. The only evidence provided by the government to

support a finding that the offices were open to the public is a statement in the affidavit that a transfer of certificate of deposit funds between Xcel Construction and Ferguson Enterprises was executed in the offices of Xcel Construction. That is hardly sufficient to support a finding that the premises were open to the public within the meaning of *Autoworld*.

For its second contention — that defendant Xcel's expectation of privacy could not extend to a concealed safe in one of the offices — the government cites no case law in support and merely asserts that "it is far from clear" that Xcel has an expectation of privacy in this safe. Although the government states that Ferguson was no longer an officer of defendant Xcel at the time of the search, the defendants assert that Ferguson was an employee of Xcel, and thus his offices can be considered part of the Xcel offices as a whole. Defendant Xcel Construction has demonstrated a reasonable expectation of privacy in its own offices.

The government raises similar objections to defendant Ferguson Enterprises's expectation of privacy in its offices at 14385 Wyoming. The government's assertion that it is "far from clear" that defendant Ferguson Enterprises has standing to object to a search of a concealed safe in its offices is devoid of support from case law or argument. To the contrary, logic suggests that a corporation has demonstrated an especially strong expectation of privacy where it has made efforts to conceal a storage location in its office from any member of the public that might enter the office. The government has provided no information to intimate that Ferguson Enterprises's offices were open to the public. The information cited by the Ferguson defendants in their reply amply demonstrates the contrary. Moreover, Ferguson himself may challenge the search based on his status as a corporate officer of Ferguson Enterprises. *See Mancusi v. DeForte*, 392 U.S. 364, 369 (1968).

-9-

The government also argues that neither defendant Hall nor defendant Woodhouse has demonstrated a reasonable expectation of privacy in 500 Griswold.  But there is no dispute that Hall and Woodhouse were co-owners and officers of Xcel Construction.  The Sixth Circuit also has recognized that "[i]n some circumstances, an officer of a corporation may be a 'person aggrieved' by a corporate search and seizure and thus have standing to challenge the search."  *United States v. Mohney*, 949 F.2d 1397, 1403 (6th Cir. 1991).  This is especially true where "he was the organizer, sole shareholder, and president of the corporation, who prepared much of the material seized from his office, where he spent the greater part of every working day."  *Ibid.* (citing *Henzel v. United States*, 296 F.2d 650 (5th Cir. 1961)).  When assessing the reasonableness of a business owner's subjective expectation of privacy in business records, pertinent factors include:

> "whether [a business agent] has made a sufficient showing of a possessory or proprietary interest in the area searched. . . . Moreover, he must demonstrate a sufficient 'nexus between the area searched and [his own] work space.'" [*United States v. Chung,*] 897 F.2d [646,] 649 [2d Cir. 1990] (citations omitted).  However, "[n]o one circumstance is talismanic" to this inquiry, *United States v. Haydel,* 649 F.2d 1152, 1154 (5th Cir. 1981), and "property rights are neither the beginning nor the end of [the] inquiry."  *United States v. Salvucci,* 448 U.S. 83, 91 (1980).  Pertinent factors also include "whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises."  *Haydel,* 649 F.2d at 1155. *See also King,* 227 F.3d at 744.

*United States v. Bli*, 147 F. Supp. 2d 734, 740 (E.D. Mich. 2001).  Defendants Woodhouse and Hall have asserted that Xcel's business records were maintained in a secure location and that they were involved in the preparation of at least some business records.  Those allegations are sufficient to establish defendants Hall and Woodhouse's reasonable expectation of privacy in those areas.  In

-10-

addition, they have claimed that they were involved in preparing the business records in question and that the business of Xcel Construction was carried out by them at 500 Griswold.

The government argues that the Ferguson defendants' bare assertion that they were permitted to store personal belongings at the 500 Griswold offices is insufficient to support a reasonable expectation of privacy. However, as discussed below, the rule in *United States v. Jeffers*, 342 U.S. 48, 52 (1951), indicates that if defendant Ferguson Enterprises were permitted to store business records in the search locations, they should be permitted to challenge the government's seizure of those records. In addition, in *United States v. Waller*, 426 F.3d 838 (6th Cir. 2005), the Sixth Circuit held that the owner of an apartment did not have authority to consent to a search of the defendant's luggage that was stored in the apartment because there was an understanding between the owner and the defendant that the luggage was private. *Id*. at 845-46. This holding implies that a defendant has a reasonable expectation of privacy in goods stored by permission at a third party's residence.

The respective defendants have a right to challenge the searches of the corporate offices on Griswold and Wyoming.

The government also argues that the Ferguson defendants do not have standing to challenge the searches of 300 Riverfront or 25495 St. James. The Court disagrees. Defendant Ferguson had a legitimate expectation of privacy in both locations even though he was not the record title holder of either residence.

It is true that a defendant ordinarily cannot challenge the search of a colleague's or relative's residence in which he has no interest, even though the search may have lacked probable cause and secured incriminating evidence. *Rakas,* 439 U.S. at 134; *see also United States v. Padilla,* 508 U.S. 77, 82 (1993) (finding no co-conspirator exception to the "personal right" rule akin to that for

-11-

admission of hearsay statements). But that restriction does not apply when the defendant has a reasonable expectation of privacy in the other residence searched. *Rakas,* 439 U.S. at 142. Such an interest will usually be found where the defendant and the owner or manager of the residence have a preexisting personal (as opposed to business) relationship and the defendant has a right of access to that residence. *See, e .g., Minnesota v. Olsen,* 495 U.S. 91, 98-99 (1990) (holding that an overnight guest has a legitimate expectation of privacy in the host's home); *United States v. Pollard,* 215 F.3d 643, 647-48 (6th Cir. 2000) (finding a reasonable expectation of privacy where the defendant had been friends with the lessee for seven years, spent the night occasionally, left clothes there, ate meals therein, and could stay there when the lessee was away); *Minnesota v. Carter,* 525 U.S. 83, 91 (1998) (finding no standing where the defendants were not overnight guests, and merely visited the premises to conduct illegal business). *See also United States v. Delgado,* 121 F. Supp. 2d 631, 639 (E.D. Mich. 2000).

Defendant Ferguson has presented evidence in his affidavit that the title owner of the 300 Riverfront property was River Place Management LLC, whose registered agent, Tyrone McMillian, was a relative of defendant Ferguson's. When questioned as to who stayed at the condominium, McMillian indicated that both he and defendant Ferguson were "in and out." Further, defendant Ferguson stored personal property at the condominium and the condominium association listed Ferguson as an owner of the condominium and was authorized to accept packages addressed to Ferguson at the condominium. There is also evidence in the affidavit to suggest that Ferguson paid for the condominium. With respect to the 25495 St. James property, the affidavit itself describes it as one of Ferguson's residences, Ferguson was once stopped in the driveway for driving under the influence of liquor and described the property as "home", a car driven for Ferguson was observed

-12-

in the property's driveway, and a government informant described the property as Ferguson's place. The Count finds that defendant Ferguson had a right of access to both locations, occasionally stayed at these locations, and stored property at the locations, and therefore he had a reasonable expectation of privacy in those locations.

The Ferguson defendants argue that Ferguson Enterprises had an expectation of privacy and may challenge the search warrants based on the corporation's decision to store cashier's checks, business records, and cash at those locations. The cases they cite are not persuasive, since they do not address a decision to store corporate records in a private residence. *See Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 390 (1920); *United States v. Leary*, 846 F.2d 592, 594 (10th Cir. 1988). In those cases, there was no question that the location searched belonged to the corporation. Here, however, the Ferguson defendants have furnished no evidence of a formal arrangement to store corporate documents at the residences.

However, an informal arrangement to store property is sufficient, and the defendants have made that showing. The idea that defendants may challenge the seizure of their property stored on premises they did not own is supported by the holdings in *United States v. Jeffers*, 342 U.S. 48, 52 (1951) (holding that an individual whose cocaine was seized from a hotel room of which he was not an occupant could challenge the police's seizure of the cocaine) and *United States v. Walker*, 426 F.3d 838, 845-46 (6th Cir. 2005) (holding that the owner of an apartment did not have authority to consent to a search of the defendant's luggage that was stored in the apartment because there was an understanding between the owner and the defendant that the luggage was private).

The Court concludes that the government's "standing" argument lacks merit.

### III. The search warrants

-13-

The defendants contend that the search warrants are defective because they contain materially false information, and when extracting the false information from the affidavit, the residue is insufficient to establish probable cause. They also argue that the affidavits for the warrants to search the residences do not contain enough information to establish probable cause to believe that evidence of the crimes would be found there.

The defendants have asked for an evidentiary hearing so they can prove that statements by affiant Matthew Nutt were false. In their motion, the Ferguson defendants mount a paragraph-by-paragraph challenge to the Nutt affidavit for 29 pages, including challenges to the boilerplate opening paragraphs of the affidavit.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56. The Sixth Circuit has explained that "to obtain a *Franks* hearing a defendant must make 'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and [ ] the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) (quoting *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008) (alteration in original)). But even if statements in the affidavit are false, "a *Franks* hearing is warranted" only "[i]f, when the alleged false statement is put aside, the affidavit no longer provides the court with probable cause." *Id.* at 504-05.

-14-

Under *Franks*, if the defendant shows by a preponderance of evidence that a search warrant affiant committed perjury or made a statement in reckless disregard for the truth, the offending statements must be excised from the affidavit and probable cause reassessed. *Franks,* 438 U.S. at 155. But incorrect statements due to mere negligence or innocent mistake are insufficient to void a warrant. *Id.* at 171; *see also United States v. Ayen,* 997 F.2d 1150, 1152 (6th Cir. 1993); *United States v. Rodriguez-Suazo,* 346 F.3d 637, 648 (6th Cir. 2003). Such information need not be removed from the affidavit. The Sixth Circuit has recognized that "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). "This is so because an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Ibid.* (internal quotations omitted). The defendant must make a "preliminary showing that the government affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit"; if the defendant makes the required showing, "the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *Ibid.* (internal quotation marks omitted).

A.  500 Griswold [dkt. # 121, 126] & 14385 Wyoming [dkt. # 147]

The warrants to search the Xcel business office on Griswold and the Ferguson Enterprises business offices on Wyoming both were based on an affidavit signed by Matthew Nutt, an agent with the Department of Housing and Urban Development, Office of Inspector General. The motions

to suppress evidence from each location may be considered together because they allege essentially the same defects in the affidavit and search warrants.

The Xcel defendants and the Ferguson defendants each allege that agent Nutt's affidavit contains false and misleading statements. Their contentions overlap to some degree and can be addressed together. Their challenges are broad-based and varied, but they can be sorted into five categories: (a) those statements the defendants contend are deliberately untruthful; (b) statements alleged to be misleading because of information not contained in the affidavit that the defendants believe should have been included; (c) challenges to the truthfulness of the inferences to which the defendants believe the facts give rise or to the way the affidavit is worded; (d) challenges based on the argument raised by the defendants in their motion to dismiss that the GVE infrastructure project was not funded with federal money and was separate from the GVE project as a whole; and (e) the alleged inadequacy of corroborating information to verify statements made by a HUD official who was not identified by name in the affidavit.

### 1. Challenges based on lack of federal funding

The Court rejects the argument in the fourth category — that the GVE infrastructure project could not give rise to a federal crime — because the affidavit reflected accurately the nature of the contribution of federal funds to the GVE project. For the reasons stated in the Court's opinion denying the defendants' motion to dismiss, the proper way to assess the federal concern is to view the project as a whole, and not to attempt to compartmentalize its various phases.

### 2. Challenges based on propriety of factual inferences

The Court also must reject the defendants' arguments based solely on the validity of the inferences the defendants believe the magistrate judge made in reaching his probable cause

determination or that attempt to provide an innocent explanation for facts in the affidavit without challenging the truth of those facts. That category of objection is an attempt to urge this Court to replace the magistrate judge's probable cause determination with its own. As the Supreme Court has instructed, this Court may not engage in a *de novo* review of the magistrate judge's probable cause determination. *Illinois v. Gates,* 462 U.S. 213, 236 (1983); *see also United States v. Allen,* 211 F.3d 970, 973 (6th Cir. 2000) (en banc). The Court cautioned that "line-by-line scrutiny . . . [is] inappropriate in reviewing magistrate's decision." *Gates,* 462 U.S. at 245 n.14. To encourage law enforcement officers to seek warrants, the Supreme Court has counseled that in close calls, doubtful warrants should be upheld. *Gates,* 462 U.S. at 237 n. 10. And "'reviewing courts are to accord the magistrate's determination 'great deference.'" *Allen,* 211 F.3d at 973 (quoting *Gates,* 462 U.S. at 236). If this Court were to follow the defendants' suggestion and reexamine each allegation in the affidavit for a possible innocuous explanation, it would be engaging in precisely the sort of *de novo*, line-by-line scrutiny that is inconsistent with the "great deference" with which a reviewing court must view a magistrate judge's probable cause determination. *Gates,* 462 U.S. at 236.

### 3. Challenges based on allegedly false statements

The Xcel defendants point to two factual inaccuracies in the affidavit: first, the statement that defendant Xcel did not publish notice of the bidding process for the subcontract that was eventually awarded to defendant Ferguson Enterprises; second, the statement that defendant Ferguson was the owner of defendants Xcel and Ferguson Enterprises at the time that those defendants entered into the GVE infrastructure project subcontract. The Ferguson defendants provide documentation of the notices placed in local papers. The Xcel defendants have attached a contract that states that

-17-

defendant Ferguson sold his shares in defendant Xcel and resigned as a corporate officer on December 31, 2005, before the subcontract was signed.

In their motion to suppress, the Ferguson defendants point out nine factual inaccuracies in the affidavit in addition to those already noted by the Xcel defendants. The Ferguson defendants argue that the $71 million in HUD funding for the GVE project cited in paragraph eighteen of the affidavit is inflated and that only $29 million in HUD funding was actually provided. They state that Ferguson Enterprises was not founded by defendant Ferguson, as paragraph seven of the affidavit states, but by his parents. They challenge the statement that Xcel received a lump sum payment of more than $500,000; instead, the Ferguson defendants state, Xcel received only $171,029.50. The Ferguson defendants argue that the statement in paragraph twenty-two that the DBA was the developer of the DBA project is inaccurate. The Ferguson defendants argue that the affiant materially misquoted the conflict of interest regulations in paragraph twenty-six, replacing the word "has" with the word "had" in the phrase "had a financial or other interest in the firm," thus suggesting that a much broader range of interests would create a conflict. In paragraph thirty, the Ferguson defendants challenge the characterization of the $11.9 million figure as a "budget," calling it instead a not-to-exceed amount. The Ferguson defendants challenge the assertion in paragraph thirty-four that the DBA did not provide HUD with a copy of its bidding and procurement procedures; the defendants produced a letter from the DBA to HUD that predates the affidavit in support of the challenge. The Ferguson defendants argue that, contrary to the statement in the affidavit, Xcel was a licensed residential builder. However, documents provided in support of this statement merely demonstrate that defendants Hall and Woodhouse were licensed residential builders, not Xcel. The Ferguson defendants argue that contrary to the allegation in paragraph forty-

-18-

nine, there was not a $1.8 million cost overrun on the GVE infrastructure project. They argue that the dollar amount of the contracts granted to Ferguson Enterprises cited in paragraph fifty-eight is overstated. In their reply brief, the Ferguson defendants add three more factual disputes. They say that the affidavit states that the subcontract was signed on August 16, 2007, when in fact it was not signed until March 18, 2008, and that the agreement between DHC and the City of Detroit was effective on December 11, 2006 when in fact it was not effective until February 5, 2007. The Ferguson defendants challenge the assertion in paragraph forty-three that defendant Ferguson was removed from an Xcel bank account; instead, the Ferguson defendants argue, the referenced letter states that defendant Ferguson should be added to the Xcel bank accounts.

The challenges listed above will not serve to upset the January 15, 2009 search warrants. As noted above, to bring a successful challenge to a search warrant based on inaccurate or false factual allegations in the affidavit, the defendants must demonstrate that without the false statements, the affidavit is not sufficient to support a finding of probable cause. *Franks*, 438 U.S. at 171-72. Even assuming that the defendants can demonstrate that each of the alleged falsehoods are, in fact, falsehoods, many of the alleged false statements pointed out by the defendants have no impact on the probable cause determination.

On the continuum between ignorance and certainty, "[p]robable cause arises if there are 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. Coffee,* 434 F.3d 887, 892 (6th Cir. 2006) (quoting *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990)). The test for probable cause calls for an assessment of whether there is "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson,* 936 F.2d 856,

-19-

859 (6th Cir. 1991) (quoting *United States v. Loggins,* 777 F.2d 336, 338 (6th Cir. 1985)).  A magistrate properly reaches that conclusion when the warrant affidavit sets forth sufficient facts that provide a "'substantial basis' for concluding that 'a search would uncover evidence of wrongdoing.'"  *United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir. 1994) (quoting *Gates,* 462 U.S. at 236).

In his affidavit, agent Nutt sets forth the grounds for his belief that federal statutes prohibiting fraud, public corruption, and money laundering were violated by contractors on the GVE project.  The basic premise of that claim is set out in paragraph 5 of the affidavit:

> Evidence developed to date in this investigation indicates that an individual identified as Bobby W. Ferguson, conspiring with others, obtained millions of dollars in contracts through fraudulent representations and hidden ownership interests in the construction management firm for the GVE project.  By concealing his ownership interests, Bobby W. Ferguson improperly steered millions of dollars in construction work between two of his companies, in violation of the applicable federal statutes and regulations that prohibit conflicts of interest and require full and open bidding in HUD fund[ed] projects.

Index of Exhibits, Ex. 2, aff. ¶ 5.  Thereafter, he sets out allegations of fact that tend to establish defendant Ferguson had substantial control over the finances of both defendant corporations, that the GVE infrastructure project was being mismanaged, that defendant Xcel was a relatively small company to have been given the construction manager contract, and that city officials may have provided defendant Ferguson with non-public information regarding construction bids in the past.  Index of Exhibits, Ex. 2, aff. ¶¶ 28, 40-42, 44-47, 50-54, 59.  That information is sufficient to support a finding of probable cause.

The precise amount of HUD funding; whether the $11.9 million was a budget or a not-to-exceed amount; whether Ferguson Enterprises was founded by defendant Ferguson or his parents; whether DBA provided HUD with a copy of its procurement process; the dates that contracts were

-20-

drafted as opposed to when they were signed — none of these questions bear on the likelihood that the defendants have engaged in criminal conduct.  After removing all of those alleged falsehoods from the affidavit, the affidavit is still sufficient to support a finding of probable cause.

### 4.  Challenges based on material omissions

The defendants also identify a wealth of information they believe should have been included in the affidavit.  As noted above, an affidavit that does not include possible exculpatory information "is less likely to present a question of impermissible official conduct" than one that contains deliberate falsehoods "because an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit."  *Atkin*, 107 F.3d at 1217 (internal quotations omitted).  Further, "it is unreasonable to expect a police officer to include every piece of exculpatory information gathered about the case in the affidavit because the standard for obtaining a search warrant is lower than the standard to convict."  *United States v. Sawyers*, 127 Fed. App'x 174, 183 (6th Cir. 2005).  Therefore, a defendant challenging an affidavit on the basis of an omission must make a strong preliminary showing that the omission was made with the intention to mislead.  *Mays v. Dayton*, 134 F.3d 809, 816 (6th Cir. 1998).

In this case, the defendants have alleged that material information is omitted from virtually every paragraph of the affidavit.  The defendants' multiple alleged omissions, some of which have no potential bearing on the probable cause determination (for example, the defendants complain that in quoting a contract, the affiant neglected to include the words "in the work" at the end of the phrase "inspect the work of the Contractors for defects and deficiencies"), are precisely the sort of

-21-

"endless conjecture about investigative leads, fragments of information, or other matter" that the Sixth Circuit has sought to avoid. *Atkin*, 107 F.3d at 1217. The defendants repeatedly complain about the affidavit's failure to mention that the GVE infrastructure project was not funded with HUD money or bound by HUD regulations and that the GVE infrastructure project was entirely separate from any larger GVE construction project. However, that cannot be fatal to a finding of probable cause because a finding that federal money was involved is not necessary to make out a violation of at least some of the statutes cited in the search warrant application. Nor does a finding of probable cause in this case depend on a finding that the defendants have violated HUD regulations. Further, the defendants' contention that the GVE infrastructure project is unconnected to the larger HUD GVE project is unsupported by the evidence currently before the Court.

The defendants state that the affidavit does not inform the magistrate that it was normal business practice for Xcel, as the construction manager, to supervise the work of its subcontractor, Ferguson Enterprises. Even assuming that the magistrate judge can be assumed to be ignorant of such business practices, the addition of this information would not negate a finding of probable cause in this case.

The defendants argue that the magistrate judge was not informed that it was undisputed that Xcel was awarded the construction manager contract through a process that was entirely fair. Even if that fact can be considered undisputed, it is unclear that the government would have agreed with that characterization at the time the affidavit was written and thus that the affiant can be said to have been intentionally misleading the magistrate judge by excluding it. In fact, the evidence cited by the defendants to support the proposition that Xcel was selected in an impartial procedure is grand jury testimony given by Robert Hunt in August 2009, approximately eight months after the search

-22-

warrant affidavit was signed. It is difficult to see how the government could have included this information in an affidavit written in January 2009.

The defendants argue that the affidavit quotes in paragraph twenty-six from an agreement between the DHC and the City of Detroit in an attempt to mislead the magistrate into believing that the agreement was binding on the defendants. However, nowhere in the affidavit is it asserted that the agreement was binding on the defendants; indeed, the affidavit makes clear that the agreement was between the DHC and the City of Detroit and does not state that the defendants were parties to or bound by that agreement. The defendants argue that the affidavit has omitted relevant language in its quotations of the construction manager contract in paragraphs thirty-one and thirty two. The Ferguson defendants complain that the affiant did not include contract language stating that all contracts with contractors are between the contract manager and the contractors, that the City of Detroit is not a party to those contracts, and that Xcel had to obtain the DBA's concurrence on the method for selecting contractors. The Ferguson defendants also state that the affiant left the words "in the work" off of his quotation of the phrase "inspect the work of the Contractors for defects and deficiencies," but do not explain how that materially changes the meaning of the phrase or how this is relevant to a probable cause determination. The Ferguson defendants' challenge to paragraph thirty-two is similar to their challenge to paragraph thirty-one: the defendants state that the affiant has not used complete quotations from the contract but instead "sporadically dances around the paragraph." However, the Ferguson defendants do not explain how the omitted language would be relevant to a probable cause analysis. The Ferguson defendants state that the affiant left out the words "other than those given in the ordinary course of business" from his quotation stating that communications would be provided "in writing and mailed by first class mail." The Ferguson

defendants argue that the affiant "wanted the magistrate to believe that each and every correspondence and document was required to be mailed."  The Ferguson defendants challenge paragraph thirty-three on much the same basis, arguing that the affiant did not quote contract language stating that notice could be delivered in person as well as through the mail.  However, the omitted language does nothing to call into doubt or to cast a different light on the allegations in the affidavit, cited above, that support a finding of probable cause.

The defendants challenge the affidavit based on the fact that it does not state that the GVE project had been troubled for many years and that the cost overrun was due to these prior troubles. However, it is, again, unclear how the addition of this information would negate a finding of probable cause in this case.  Further, the affidavit does state that DHC had been previously identified as a troubled performer and that a HUD recovery administrator had been appointed to oversee the DHC.  Index of Exhibits, Ex. 2, aff. ¶ 19.

The Court finds no basis to conclude that there were omissions of information from the affidavit that betrayed an intention to deceive by the affiant, or that would undermine the magistrate judge's finding of probable cause.

5.  Challenges based on lack of corroboration of unnamed HUD official's information

Finally, the defendants challenge the reliability of information provided by an unnamed HUD employee, arguing that the affidavit does not provide sufficient allegations as to the credibility of the employee.

When the facts supporting a finding of probable cause come from a hearsay source, the magistrate must have some basis to assess the reliability of the declarant.  The precedents do not prescribe any specific formula by which reliability is to be gauged, *Allen*, 211 F.3d at 975-76; as a

-24-

general rule, however, the decisions have required either independent corroboration by law enforcement officials or some showing that the informant is otherwise reliable, such as a history of furnishing information that turned out to be accurate. *See United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (noting that "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information"); *United States v. Smith,* 182 F.3d 473, 483 (6th Cir. 1999) (stating that "if the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required"); *United States v. Frazier,* 423 F.3d 526, 532 (6th Cir. 2005) (observing that "in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration").

The defendants cite *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996), in which the officer alleged that a confidential informant had provided reliable information in the past but engaged in no independent investigation to corroborate informant's tip. *Id*. at 1379-80. The court held that the officer's reliance on the search warrant without this independent investigation was unreasonable. *Ibid.* However, *Weaver* is readily distinguishable. In this case, the affidavit presents the HUD employee's tip, but then details the substantial investigation undertaken to corroborate the tip. Indeed, the affidavit's discussion of the HUD employee's information is placed at the beginning of the factual summary and appears to be intended to explain the genesis of the investigation that followed. The Sixth Circuit has explained that "'an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information.'" *Coffee,* 434 F.3d at 893 (quoting *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004)). In such a situation, the

-25-

magistrate judge has not been asked to make a probable cause determination based solely on a potentially unreliable hearsay witness; instead, the magistrate judge has been presented with the fruits of the officer's independent investigation corroborating the statements of the witness.

The Court finds no deficiency in the affidavit based on the inclusion of the unnamed HUD employee's hearsay statements.

The Court also finds that the affidavit of agent Nutt established probable cause to issue a warrant to search the Xcel offices at 500 Griswold.

### B.  300 Riverfront and 25495 St. James [# 146]

The Ferguson defendants argue that the affidavit supporting the search warrants for 300 Riverfront and 25495 St. James lacks information from which a magistrate judge could find probable cause to believe that evidence of a crime would be found at those properties.  The government, in its response, does not point to any specific evidence that would support a finding of probable cause, instead making the general assertion that the affidavit was supported by witness statements and documentary evidence.

"Probable cause is described as a fair probability — not an absolute certainty — that evidence of the crime will be found at the location."  *United States v. Martin,* 526 F.3d 926, 936 (6th Cir. 2008) (quoting *Gates,* 462 U.S. at 238).  However, "[t]here must . . . be a 'nexus between the place to be searched and the evidence sought.'"  *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters,* 163 F.3d 331, 336-37 (6th Cir. 1998)).

The defendants argue that the affidavit signed by agent Gwen Rosenthal states no more than that Bobby Ferguson may have been involved in criminal activity in connection with his businesses,

and that he spent time at the residential dwellings. Countenancing a finding of probable cause based on those scant allegations, the defendants argue, would permit a search of any residence where the defendant spends any time.

However, the Sixth Circuit has decided several cases upholding search warrants for the homes of known criminals — mostly drug dealers and manufacturers — based on the logical premise that incriminating evidence is likely to be found at the residences of drug dealers when there is probable cause to believe that an individual is a drug trafficker (and not merely in possession of controlled substance). *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007) (upholding search of residence based on probable cause that the defendant was involved in the manufacture of a controlled substance in another location, and noting that "[i]n *United States v. Miggins*, 302 F.3d 384, 393–94 (6th Cir. 2002), we held, following a long line of precedents, that a sufficient nexus existed to search the residence of a known drug dealer after he had been arrested for possession of cocaine."); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002) (collecting cases); *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000); *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (stating that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live"); *see also United States v. Yates*, 132 F. Supp. 2d 559, 564-65 (E.D. Mich. 2001).

Nonetheless, following the injunction that the probable cause determination cannot be "reduced to a neat set of legal rules," *King*, 227 F.3d at 739, the court has stopped short of establishing a categorical rule that an arrest of a known criminal *ipso facto* justifies the search of his home. *See United States v. Frazier*, 423 F.3d 526, 532-33 (6th Cir. 2005) (holding that "[w]here, as here, the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnessed illegal activity on the premises of the

-27-

proposed search), the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence").  Instead, the affidavit must allege facts establishing "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime *will be found in a particular place*."  *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir. 1991) (quoting *United States v. Loggins,* 777 F.2d 336, 338 (6th Cir. 1985)) (emphasis added).

The Court will examine agent Rosenthal's affidavit with those rules in mind.  In paragraphs twelve and thirteen of the affidavit, the affiant alleges that the Ferguson defendants used various front companies to launder money, including Urban Development LLC and River Place Management LLC, the title owner of 300 Riverfront.  In paragraph fourteen, the affiant states that defendant Ferguson has concealed the fact that 25495 St. James is one of his residences by using Shakib Deria as a nominee owner and naming other addresses as his residence on various government filings.  The affidavit also describes various money laundering activities that occurred after the January 15, 2009 search warrant was executed, including large cash withdrawals from First Independence Bank by defendants Ferguson and Deria and McMillian, the registered agent of River Place Management LLC and Urban Development LLC. The affidavit then describes the connection, mentioned above, between defendant Ferguson and the 300 Riverfront property.  The affidavit states that McMillian had stated about 300 Riverfront that "it's Bobby Ferguson's, it's just in my name for legal rights."  Ferguson Defs.' Mot. to Suppress 300 Riverfront Evidence, Ex. 3 ¶ 43.  McMillian also stated that Ferguson had asked him to place a boat in his name, "legal rights for nobody know." *Id*. at ¶ 44.  The affidavit also states that McMillian had set up two bank accounts that were used primarily by defendant Ferguson.

The affidavit also states that defendants Deria and Ferguson controlled a bank account in the name of defendant A&F Environmental/Johnson Construction Services, and that in 2005 and 2006 the defendants structured approximately $170,000 through that account by making a series of withdrawals in the amount of $9,500. The affidavit states that some of the money in that account may have come from alleged extortion payments from an unnamed corporation, and suggests that some of these extortion payments may have been used to set up the initial bank account for River Place Management LLC. The affidavit cites a phone conversation between defendant Ferguson and Kwame Kilpatrick, recorded while Kilpatrick was in the Wayne County Jail, in which the parties refer to upcoming travel by "that African," believed to be Deria. The affidavit also cites information from an informer, who the affidavit states has entered into a plea agreement and agreed to cooperate with the investigation. The affidavit states that the informant's information has been corroborated. The informant stated that defendants Ferguson and Deria traveled to the United Arab Emirates to set up foreign business entities in November 2008, shortly after the conversation between defendant Ferguson and Kilpatrick, and again in May 2009. The affidavit also relates the information, mentioned above, that suggests that 25495 St. James was a residence of defendant Ferguson.

In short, it is not quite true, as the Ferguson defendants argue, that the affidavit contains absolutely no evidence connecting Ferguson with the locations to be searched. With respect to the 300 Riverfront property, the affidavit alleges that defendant Ferguson used the title owner of that property, River Place Management LLC, as a front company to launder money. The affidavit also states that defendant Ferguson and McMillian, the two individuals connected with 300 Riverfront, had made large cash withdrawals shortly after the January 15, 2009 search. With respect to the 25495 St. James property, the affidavit presents information to suggest that defendants Ferguson and

Deria, the two individuals associated with that property, previously had been involved in structuring financial transactions.

But those facts do not explain why evidence of the fraud, corruption, and money laundering crimes would be found at those locations. The cash withdrawals by Ferguson and McMillian occurred months before the affidavit was drafted; the structuring of financial transactions occurred in 2005 and 2006. The affidavit does not provide any direct evidence that would suggest that evidence of criminal activity would be found in the search locations, rather than in any other location associated with Ferguson, Deria, or McMillian. For example, although the government apparently had the opportunity to interview McMillian prior to preparing the affidavit, the affidavit contains no statement by McMillian that would indicate that defendants Ferguson or Ferguson Enterprises stored business records or cash at 300 Riverfront. The government appears to be relying largely on the affiant's statement that, in her experience and based on her training, individuals accused of money laundering keep evidence of that money laundering at their homes or at the homes of their nominees. The government has offered nothing more.

The Sixth Circuit has held that an officer's "training and experience" alone will not provide the particularized data necessary to support a conclusion that evidence is likely to be found in a particular place. *See United States v. Schultz,* 14 F.3d 1093 (6th Cir. 1994). In *Schultz,* the officer sought warrants for both a safe deposit box and an apartment. Although sufficient evidence existed to justify the search of the apartment, in light of the number of phone calls placed to others from the apartment to facilitate drug sales, the safe deposit boxes were viewed differently:

> Officer Ideker had not made any material connection between the bank and any criminal activity. Star Bank employees did not report any illegal activities related to either the loan or the safe deposit boxes, and Ideker had no other information connecting them to any illegal activity. In his affidavit for the first warrant, the only

connection Ideker made was that, "Based on his training and experience, [he] believe[d] . . . that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposit boxes."

While an officer's "training and experience" may be considered in determining probable cause, *see, e.g., Texas v. Brown,* 460 U.S. 730, 742-43, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *U.S. v. Martin,* 920 F.2d 393, 399 (6th Cir. 1990), it cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity. Officer Ideker did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the first warrant should not have been issued. To find otherwise would be to invite general warrants authorizing searches of *any* property owned, rented, or otherwise used by a criminal suspect — just the type of broad warrant the Fourth Amendment was designed to foreclose.

*Id.* at 1097-98.

The same can be said for the affidavit in this case. The affidavit recites evidence that individuals connected with the properties to be searched had engaged in illegal activity, with some intimation that River Place Management LLC, the title owner of the 300 Riverfront property, might be a front company used to launder money. But it says nothing to allow a reasoned conclusion that evidence of the crimes would be kept or found at the residences. The affidavit contains no allegations that records, cash, or other evidence was stored at those locations or that the defendants were engaging in criminal activity at the locations. The swearing officer's recitation of her training and experience is nothing more than an invitation to conclude that because others have stored incriminating records at their residences, these defendants probably behaved the same way. That, however, is not enough. In such a situation, *Schultz* teaches that the affidavit in support of the search warrant does not establish "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in" the location sought to be searched. *Davidson,* 936 F.2d at 859. Probable cause, therefore, is lacking.

-31-

However, even where the warrant was not supported by probable cause, the evidence obtained need not be suppressed when it was "'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Hython,* 443 F.3d 480, 484 (6th Cir. 2006) (quoting *United States v. Leon,* 468 U.S. 897, 905 (1984)). "'[T]he relevant question is whether the officer reasonably believed that the warrant was properly issued, *not* whether probable cause existed in fact.'" *Id.* at 487 (quoting *United States v. Laughton,* 409 F.3d 744, 752 (6th Cir. 2005) (emphasis in original)). The good faith exception does not apply in four situations:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*Id.* at 484 (citing *Leon*, 468 U.S. at 923).

Pointing to the third exception, the Ferguson defendants argue that the searches cannot be saved by the "good faith exception" because the affidavit was so devoid of indicia of probable cause that a belief in its validity was unreasonable. They cite two cases in support of their contention: *United States v. Weaver*, 99 F.3d 1372, 1380-81 (6th Cir. 1996), and *United States v. Bryant*, 951 F. Supp. 674, 679 (E.D. Mich. 1997), in which courts found that an affidavit was so lacking in probable cause that belief in its existence was entirely unreasonable. However, both cases are readily distinguishable from the present case.

In *Weaver*, the affidavit was "based almost entirely on hearsay information supplied by a previously reliable confidential informant" and was largely comprised of boilerplate. *Id*. at 1377.

-32-

The Sixth Circuit found that the affidavit was "bare bones" because the officer engaged in no independent investigation to corroborate the tip and that the officer's reliance on the search warrant without that independent investigation was unreasonable. *Id*. at 1379-80. In contrast, the affidavit in this case was based on a lengthy investigation that had already resulted in a multi-count indictment. The affidavit was thirty-nine pages long and referenced several informants and witnesses, as well as ample documentation linking the properties to be searched with individuals believed to be engaging in criminal activity. Such an affidavit cannot be said to be "bare bones." Further, *Weaver* has been limited to its facts, and the Sixth Circuit has found that a similar affidavit not only would pass good-faith muster under *Leon*, but also would support a finding of probable cause. *Allen*, 211 F.3d at 974-76.

Ooh, *Bryant*, the other case the Ferguson defendants cite, relies heavily on *Weaver*. In *Bryant*, the court found that officers could not have reasonably relied on an affidavit that contained as its sole piece of evidence a statement by an informant that the defendant possessed firearms. *Id*. at 678-79. In that case, the court found it relevant that the officers involved had made no attempt to corroborate the informant's statement and that the statement did not describe the handguns in detail. *Ibid*. But here, the lengthy investigation and detailed description in the affidavit presently before the Court stands in stark contrast to that described in *Bryant*.

Finally, the Ferguson defendants argue that in light of the decision in *Schultz*, the officer should have known that the affidavit in this case was insufficient to support probable cause, and therefore her reliance on the warrant was unreasonable. However, the *Schultz* court rejected a similar argument and held that the search was saved by the good faith exception. *Schultz*, 14 F.3d at 1098. The court stated that there was sufficient evidence to support a finding of probable cause

-33-

that the defendant in that case had committed a crime, and although the officer's "'training and experience' were not sufficient to establish a nexus of probable cause between that crime and the safe deposit boxes, the connection was not so remote as to trip on the 'so lacking' hurdle." *Ibid*. The same reasoning applies here. The Ferguson defendants do not contest that there was probable cause to find that the defendants had committed a crime, and there was at least some evidence that connected the defendants to the searched locations.

Moreover, this Court has found that "in cases where the nexus between contraband likely possessed by the defendant and the defendant's household has been lacking, the court of appeals has found the question to be sufficiently close to warrant a finding of good faith." *United States v. Crockett*, 548 F. Supp. 2d 435, 443 (E.D. Mich. 2008). In *Crockett*, the Court held that the good faith exception applied to save a search where the warrant was silent on the connection between the defendant's illegal activity and his residence except for a statement that an officer's training and experience led him to believe that contraband would be found at the residence. *Ibid*. The Sixth Circuit precedent on this very point has been summarized in *United States v. Frazier*, where the court found that the search warrant was not supported by probable cause because there was an insufficient connection between the defendant's alleged illegal conduct and his residence. The court stated:

> For example, we held in [*United States v.*] *Van Shutters,* 163 F.3d [331,] 336 [(6th Cir. 1998)], that an officer relied in good faith on a warrant where the affidavit described the residence and the suspect's criminal scheme but connected the place to the illegal activity only by stating that the residence "was available" to the suspect. In *United States v. Schultz,* 14 F.3d 1093, 1098 (6th Cir. 1994), we held that an officer reasonably relied on a warrant authorizing the search of a bank safety deposit box where the affidavit underlying the warrant connected the box and the defendant's drug trafficking only by stating that the officer's training and experience led him to believe that evidence would be located there. And in *Savoca,* we held that, in light of a Sixth Circuit case which says that bank robbers often conceal

-34-

evidence of their crimes in public and private places, an officer's reliance on a warrant to search a hotel room was reasonable when the affidavit underlying the warrant connected the hotel room to a bank robbery only by stating that the robbers were seen in the room on two prior occasions. [*United States v. Savoca,*] 761 F.2d [292,] 297-98 [(6th Cir. 1985)].

*Frazier,* 423 F.3d at 536-37.

Similarly, in this case, the affidavit provides sufficient probable cause to find that the defendants had engaged in money laundering and structured financial transactions. Although the connection between those activities and the searched locations is not spelled out, and the sole (and insufficient) connection to the premises finds its roots only in the affiant's training and experience, the Sixth Circuit's precedents on this issue suggest that the good faith exception is applicable in this case, and actually do not allow any other result.

## IV.  Conclusion

The Court finds that the defendants have a reasonable expectation of privacy in the various premises to permit them to challenge the respective search warrants. The Court also finds that the affidavit in support of the January 14, 2009 search warrants established probable cause to search the business premises of Xcel Construction and Ferguson Enterprises, even when the allegedly materially false statements are not considered. The Court also finds that the affidavit of September 7, 2010 did not establish probable cause to believe that evidence of the crimes would be found in the residences searched on September 8, 2010, but the officers relied in good faith on the search warrants, and therefore, the evidence cannot be suppressed.

Accordingly, it is **ORDERED** that the motion to suppress evidence seized in the searches of 500 Griswold filed by defendants Xcel Construction Company, Michael Woodhouse, and Calvin Hall [dkt. # 121], and joined by defendants Bobby Ferguson, Ferguson Enterprises, Inc, and A&F

Environmental/Johnson Construction Services [dkt. # 126], and the motion to suppress evidence seized in the searches of 14385 Wyoming filed by defendants Bobby Ferguson, Ferguson Enterprises, Inc, and A&F Environmental/Johnson Construction Services [dkt. # 147] are **DENIED**.

It is further **ORDERED** that the motion to suppress evidence seized in the searches of 300 Riverfront and 25495 St. James [# 146] is **DENIED**.

s/David M. Lawson _____
DAVID M. LAWSON
United States District Judge

Dated:   February 27, 2012

<table>
<tr><td>

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 27, 2012.

s/Deborah R. Tofil _____
DEBORAH R. TOFIL

</td></tr>
</table>